**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:16-cv-00080-JRG |
| | § | |
| TREND MICRO, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Trend Micro, Inc.'s ("Trend") Motion to Transfer Venue (Dkt. No. 19) (the "Motion"), wherein Trend moves this Court to transfer the above-styled action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Having considered the parties' written submissions, the Court **DENIES** the Motion.

**I.     Applicable Law**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re*

*Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* Absent such a showing, however, the plaintiff's choice is to be respected. *Id.*

**II.   Analysis**

The Court will examine each of the applicable private and public factors listed above, addressing the parties' specific arguments where applicable.

**A.  This Action Could Have Been Brought in Northern District of California**

The parties do not dispute that this action could have been brought in the Northern District

of California ("NDCA"). Thus, the threshold requirement for a § 1404(a) transfer has been satisfied.

### B. Private Interest Factors

#### i. Relative Ease of Access to Sources of Proof

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered. *See Volkswagen II*, 545 F.3d at 316. In this case, Plaintiff Implicit, LLC ("Implicit") is a Washington limited liability corporation maintaining its principal place of business in Seattle, Washington. Defendant Trend is a California corporation with its principal place of business in Irving, Texas.

Implicit has identified significant relevant evidence within or near the Eastern District of Texas ("EDTX"). Trend itself is headquartered in Irving, Texas, around 20 miles from EDTX. Its Irving office houses Trend's finance, marketing, and customer service operations. (*See* Dkt. No. 53 at 6.) Accordingly, Implicit identifies specific categories of documents located in Irving relevant to both infringement and damages in this case: (1) marketing and sales records located in relevant to sales of allegedly infringing products; (2) customer service records that relate to the configuration of the accused products and relevant to Implicit's inducement claims; and (3) customer usage scenarios relevant to the importance of the infringing features. Implicit has also identified potential sources of proof relating product development, licensing efforts, and patent prosecution within or near EDTX in the possession of third parties. (*Id.*) Implicit identifies licensees to the patents-in-suit—two within EDTX and three others within Texas—and expects these licensees to have documents relating to product development and non-litigation licenses. (*Id.*) Implicit also identifies that the patent prosecutor for four of the patents-in-suit resides in Austin, Texas where the prosecution records still reside. (*Id.*) Further, Implicit states that it

retained two professors residing in Texas as technical consultants relating to the patents-in-suit. (*Id.*)

Trend argues that the majority of the hard copy and electronic documents and records relevant to liability and damages are located at Trend's offices in San Jose, California; or Ottawa, Canada; or stored on Trend's servers in San Jose.  (Dkt. No. 16 at 5.)   Trend represents that while source code is securely stored in Trend's Taiwan offices, it is accessible (to only authorized personnel) from the San Jose office. (*Id.*)   Further, all the operational equipment used to develop the accused products is located in San Jose, as well as in Ottawa. (*Id.*).

Implicit responds that Trend overstates its connections to NDCA.   Implicit points out that more than a year prior to this lawsuit Trend relocated its design and development team from California to Ottawa, and along with it documents relating to design and development.   (Dkt. No. 53 at 10.)   Regarding sources of proof in the custody of third parties, Implicit argues that (1) the alleged AMD prior art witnesses identified by Trend are largely in Texas, not California, (2) that Broadcom is headquartered over 100 miles south of NDCA, and (3) that none of the resellers and customers of the Accused Products within NDCA have relevant information that is not already in Trend's possession.   (*Id.* at 13–14.)

Both parties have identified relevant evidence and witnesses located in or near both EDTX and NDCA.   However, there are greater and more significant sources of proof located in or near EDTX.   Accordingly, this factor weighs against transfer.

### ii.  *Availability of Compulsory Process*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *See In re Volkswagen II*, 545 F.3d at 316.

Third-party subpoena is governed by Fed. R. Civ. P. 45, which, as recently amended in 2013, provides the presiding court with nationwide subpoena power to order third-party witnesses to attend deposition, so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A); *see VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014).

Trend identifies several non-party inventors of prior art relevant to the case that are subject to compulsory process in the NDCA. (Dkt. No. 16 at 6) In addition, Trend argues that many enterprise resellers of the accused products reside within the subpoena power of NDCA. (*Id.* at 6–7.) Implicit responds that (1) the witnesses identified by Trend are either irrelevant or not actually in NDCA; (2) that some of the inventors of the allegedly relevant AMD prior art patents actually reside in Texas; and (3) that the enterprise resellers and customers identified by Trend carry minimal weight because they do not have relevant information that is not already in Trend's possession and therefore eliminating any need to take their depositions or call them at trial. Implicit also identifies the third parties discussed above as parties with knowledge of the development and licensing of the technology within this Court's subpoena power. (*Id.* at 15.)

In this case, the availability of compulsory process factor is neutral.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be

5

travelled." *Id.* at 1343 (citing *In re Volkswagen II*, 545 F.3d at 317).

Here, Implicit's only party witness is located in Bellview, Washington making NDCA a slightly more convenient venue for Implicit's willing witness. Trend is headquartered in Irving, Texas, and maintains relevant offices in San Jose and Ottawa. The parties have identified three employees in the San Jose office likely to have information relevant to the accused products and who are expected to provide testimony in this case. (Dkt. No. 16 at 8; Dkt. No. 53 at 11 n.36) Travel to NDCA would be more convenient for these two employees. The parties have also identified at least four Trend employees in the Irving headquarters with relevant information, possibly more. (Dkt. No. 53 at 11–12.) Travel to EDTX would be much more convenient for these employees. The parties have also identified seven employees with relevant information in the Ottawa office. (Dkt. No. 53 at 2) Travel to San Francisco or Tyler from Ottawa is roughly the same in convenience, (*see* Dkt. No. 68 at 5), and therefore neither venue is more convenient for these employees. On balance, despite Trend's urging to transfer this case to NDCA, EDTX is more convenient for Trend's own witnesses and party witnesses overall.

As noted above, Implicit has identified third-party witnesses near EDTX relating to the prosecution of and development of the technology underlying the patents-in-suit. Implicit identifies licensees, technical consultants, numerous customers, and the prosecuting attorney all within Texas. Trend makes no comparable showing. Travel to EDTX would be more convenient for these third-party witnesses. The weight afforded to third-party witnesses (over employee witnesses of the parties) is generally greater and properly should be more important in any venue analysis.

In sum, this factor weighs against transfer.

### iv. All Other Practical Problems

"Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. App'x 295 (Fed. Cir. 2011).

Trend argues that Implicit's predecessor previously filed two cases related to the patents-in-suit in NDCA. Specifically, Implicit filed lawsuits in NDCA in July 2010 and July 2014 asserting U.S. Patent Nos. 6,629,163 (a parent) and 8,694,683 (a patent-in-suit). *See Implicit Networks, Inc. v. F-5 Networks, Inc.*, Case No. 3:10-cv-03365-SI ("*F5 I*") (N.D. Cal.); *Implicit L.L.C. v. F5 Networks, Inc.*, No. 14-CV-02856-SI, 2015 WL 2194627, at *4 (N.D. Cal. May 6, 2015). In both of those cases the NDCA court entered claim construction orders construing claim terms. On the other hand, only one other motion to transfer has been filed by another consolidated defendant. *See* Dkt. No. 24, *Implicit LLC v. NEC Corp. of Am.*, Case No. 6:16-cv-00078. Therefore, transferring the instant case alone (or with the member NEC case) would result in two district courts making independent decisions regarding the same set of patents. Such runs counter to the principles of judicial economy and comity. *See In re Canrig Drilling Tech., Ltd.*, 2015 WL 10936672, at *1 (Fed. Cir. Aug. 7, 2015).

On balance, this factor is neutral.

### C. Public Factors

#### i. The Administrative Difficulties Flowing From Court Congestion

Trend recognizes that the the median time to trial for patent cases in this Court is shorter, 22.5 months in EDTX versus 31.7 months in NDCA. However, Trend attempts to circumvent that reality by arguing that the intellectual property caseload in this Court is far heavier than that of

NDCA.  (Dkt. No. 16 at 10.)  Trend cites no authority to support its argument that "intellectual property caseload" should be a relevant venue consideration, and the Court sees no reason why it would be.  *See Novartis Vaccines & Diagnostics, Inc. v. Bayer Healthcare LLC*, Civ. Act. No. 2:08-CV-068, 2009 U.S. Dist. LEXIS 89117, at *14 (E.D. Tex. Sept. 28, 2009) ("Defendants have presented statistics for 2007 regarding the number of patent cases per judge in the Northern District of California and the Eastern District of Texas. Defendants have failed to show that these bare statistics translate into more administrative difficulties or a slower disposition of cases in the Eastern District.").

Therefore, this factor weighs against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

The Court must consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *In re Volkswagen II*, 545 F.3d at 318.

Trend argues that NDCA has a strong interest in this case because it is home to Trend's technology and innovation center and that EDTX has little particularized interest in this litigation.  (Dkt. No. 16 at 10–11.)  Implicit contends that EDTX does have a particularized and a substantial interest in this litigation because, by virtue of its Irving headquarters, Trend is effectively an employer of EDTX residents.  (Dkt. No. 53 at 20.)

This factor is therefore neutral.

### iii. Avoidance of Unnecessary Conflicts of Law

The Court agrees with the parties that there are no conflict-of-law issues apparent in this case. This factor is also neutral.

### iv. The Familiarity of The Forum With The Governing Law

The Court agrees with the parties that both courts are equally familiar with patent law. The final public factor is neutral.

### III. Conclusion

In sum, relative ease of access to sources of proof, convenience of witnesses, and court congestion weigh against transfer. No factors weigh in favor of transfer. The balance of the private and public factors demonstrates that Trend has fallen short of establishing that the Northern District of California is "a clearly more convenient forum." *In re Volkswagen II*, 545 F.3d at 315. Plaintiff Implicit's choice of venue will remain undisturbed. *Id*

For the reasons stated above, Implicit's Motion to Transfer Venue (Dkt. No. 16) is **DENIED**.

**So ORDERED and SIGNED this 1st day of September, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE